Stat Worker, 192480, Ms. Gross. Thank you. May it please the Court, I'm Amy Gross from Duane Morris. I represent the appellant, Stat Work Frankfurt on Main Holding, GMBH, and we're appealing the District Court's decision to cross a subpoena that Stat Work served on the appellee, we'll call him Rowetta, made in aid of forum proceedings, and that subpoena was served on Rowetta. Also, we were required to serve on the parties against whom the evidence was likely to be used in the forum proceedings, including, among others, Rowetta's German parent, RWEAG, and its CEO. Now, the trial court's conclusion, crossing Stat Work's subpoena on Rowetta was an abuse of discretion. It was without the range of permissible decisions. There are two main reasons for that. I'll just discuss these very briefly, and then I'll get into them in more detail. But the first issue giving rise to an abuse of discretion is that the District Court found that Rowetta had conducted a reasonable search for documents in response to the subpoena and not found any documents. The District Court found this even though Rowetta admitted that it conducted no search for documents, and moreover, that it had at least one responsive document that it did not produce, and that there were additional categories of potentially responsible documents that might also exist. So to find that Rowetta had conducted a search when it conducted no search, and that no documents existed when documents apparently did exist, is just not within the range of permissible decisions, and it's abuse of discretion. The second issue is that the District Court found that Rowetta did not have control over responsive documents held by Rowetta's ultimate German parent company, again, RWEAG, even though Rowetta's sole representation regarding whether it could obtain documents from RWEAG if it asked for them, so if it had practical control over those documents, was based on a vague, unsupported understanding Rowetta's general counsel mentioned in the declaration that was filed with Rowetta's reply papers on the motion to plot. So that, again, is an abuse of discretion. Going really more deeply into the first point, the District Court abused its discretion in finding that Rowetta conducted a reasonable search when, in fact, it conducted no search. With respect to the documents in Rowetta's direct possession, so now we're leaving aside anything the German parent might have, the District Court accepted Rowetta's argument that it didn't have to search for documents because Rowetta didn't think there was anywhere it was likely to find documents responsive to the subpoena. This finding was based on a declaration from Rowetta's GC that she had interviewed Rowetta's employees, was told they didn't have any involvement with the transaction that was the main issue in the European proceedings that are contemplated, and engaged in no other work regarding various subjects covered by the subpoena, and that Rowetta didn't maintain centralized files pertaining to the subjects covered by the subpoena. And the District Court said this was enough, Rowetta had conducted a reasonable search, despite the fact, again, that Rowetta did not, in fact, search for any documents. No hard copies, no emails, nothing. Now, what's wrong with this? First of all, it doesn't matter whether Rowetta's personnel specifically worked on the underlying transaction in Europe or the Business Sectors Act that's asked about in the subpoena. What matters is whether or not Rowetta has any responsive documents. And Rowetta admits that it hasn't looked for them anywhere. But Rowetta's own admissions, in fact, go further and indicate that it had at least one responsive document, and that there are likely more than that. Again, Rowetta's GC and her declarations in support of the motion to quash said that in early 2017, Rowetta provided information in a document about a wind farm that invests in, to Energi, that's another RWEAG sub that's asked about in the subpoena. And this document is, in fact, responsive to one of the document requests in the subpoena. It seeks all documents referring, reflecting, or relating to Energi's renewable energy business. So, you know, there's at least one responsive document that was referred to by Rowetta in its papers, but that was not turned over. So this shows Rowetta, again, has... This is Greg Park. Can I ask you a question about where, specifically, the District Court abused its discretion? It seems like the court took the declaration of the GC at face value. And I guess my question is, what kind of testing is the District Court obligated to do, in your view, in terms of parsing the specific representations that are made by the general counsel of the company? Well, I would say that the abuse of discretion happened, certainly, when the District Court was presented with, on one hand, a representation that Rowetta didn't think there was anywhere it could look for responsive documents, but, on the other hand, a representation that at least one responsive document existed that was not turned over, and that, in fact, there were references to other documents that Rowetta had, items it received from the parent company in the usual course, also representations that, at some point during the period covered by the subpoena, Rowetta's employees learned about the transaction at issue, something that passed about in the subpoena. So, certainly, the District Court faced with evidence, in fact, submitted by Rowetta that there were potential categories of responsive documents that it did not search, that there was at least one responsive document that it did not turn over, and that Rowetta didn't do an additional search for. Let me ask you about that responsive document, Ms. Gross. You say in your own papers that the reason for the subpoena was your client's belief that certain parties knew about the EON transaction months before it was announced. This document, which I agree with you, is included within the broad language of one item in the subpoena related to a wind farm a year before in the United States where apparently there was some information given about the wind farm and nothing happened. So, putting aside the responsiveness issue for a moment, how is that relevant to what your client was seeking? Can you explain the relevance to me? How that would show that parties knew about the EON transaction because some information was sent to ING a year before about a wind farm? Right. Well, I guess there are a couple of strands to that. One strand is we don't know exactly what it says because it wasn't turned over. The other strand of that is that a big part of this deal was interest in renewable energy, and one of the things that we want to know about obviously is how early was this transaction on everybody's radar. If it was on their radar in 2017 and this is being expressed through this document and through others that we don't know because there hasn't been a search done, then that potentially is going to speak to what were the topics that were being dealt with with respect to energy. I think you're missing my point. My point is if the document said, if they said we had one document that related to EON transaction, then I think you'd have a much stronger argument. Well, you need to do a much more intensive search, but here they interviewed all their employees. They said they had no responsive material, all six of them, the current ones. They checked to see whether or not any of them would have been included in any communications with respect to Rowetta on the transaction, and I think you're suggesting even that situation, and also you have to take into consideration the fact that the business has no overlap. There's no business overlap. Rowetta operates on a different continent, a different market, and that the district court concluded, I think, that it was not likely that there would be any responsive documents given what was done here. I don't think you're suggesting to us that the law requires in every instance companies, even when there's no likelihood they're going to have documents, can search every computer or every physical file for a responsive document, are you? No, I'm not suggesting that a company has the obligation to search every scrap of paper. However, there are a couple of things. One, to suggest there's no overlap, that's not really clear. The parent company does business in the United States concerning energy features, as does Rowetta. There may be some overlap there. Certainly, Rowetta appears to have had some involvement in green energy in the United States because it was sending information out to energy and others. So the extent of that, maybe it's not a huge extent, but there does appear to be some overlap, and given that there was absolutely no attempt made at a search, it doesn't seem likely. This is Judge Lillier. I'm sorry, go ahead, Judge Bianco. No, no, go ahead, Judge Lillier. You go first. When you say, I'm just a little confused, Ms. Gross, because when you say that there was no search, the declaration of the GC says, to determine whether any Rowetta employees possess any information or documents responsive to the subpoena. I interviewed, and obviously this is right out of the same declaration. They found the documents that I think Judge Bianco is referring to. So I'm a little hard put to understand your statement or argument that there was no search. There was a search, and really it seems to me the question was whether that was a reasonable search, which all the parties and Judge Furman determined was the applicable standard. You're taking on more than you need to when you say no search. Well, I guess there is not, as Rowetta represented it, any specific attempt to look at documents, no attempt to do an email search with search terms when there are only six employees, no attempt to look at hard-copy documents. Now, there is a reference to this one responsive document, but Rowetta hasn't represented that it made a specific search for it. How Rowetta came up with it, it's not clear because it's not discussed. A fair inference from reading the declaration is that a search was conducted. Now, you may not be happy with the search. People may not be happy with the search, and we may quibble about whether or not the search was reasonable, but I don't see how you can't fairly infer from this declaration that some search was conducted, particularly given the fact that it yielded, as you pointed out, a potentially responsive document. With respect, Your Honor, I disagree. If Rowetta had done an actual search, I think it would have made that representation in its papers. Instead, the representation that it made was it interviewed some employees, it looked into what sorts of central files Rowetta maintained, and it determined that there was no place that it could search for documents where they were reasonably likely to be found. So to infer from a reference to one document that Rowetta has not described how it found, that Rowetta, in fact, conducted a search beyond interviewing employees and looking at what sorts of main files Rowetta maintained, to infer that Rowetta, in fact, actually searched some portion of those files, that's just not supported by Rowetta's submission. Mr. Osterweil, I interrupted you, so do you have a question? That's okay, Judge O'Leary. I know in your papers you said that you need these documents because, you know, there are potential claims against Rowetta itself that could be brought, but I'm just curious why your client has not sought these e-mails from RWEAG. Is there some reason why they could not get any relevant e-mails, communications between these two entities if they existed under foreign law? What's the barrier to having RWEAG search its own computers for such e-mails? Apologies. Apologies. One question, you had said, and I just want to make sure that there's no confusion here, you had said that we had represented that Stadwerk was contemplating a claim against Rowetta, the American company. That is not the case. I just want to make clear that you agree. I thought you said there were independent reasons in the papers for seeking these against Rowetta, but maybe I misread that. But anyway, the bottom line question is, is there some foreign law barrier to getting these e-mails directly from RWEAG? Yeah. So the issue with obtaining documents directly from RWEAG is just that the law on discovery in Germany, you know, before the German state courts and before a contemplated arbitral tribunal, you know, it doesn't permit the type of access usually that you can get in the United States. For example, you know, generally the German courts don't require parties to, you know, turn over a bunch of, you know, a category of documents. It's possible to ask for specific documents if you can describe them with particularity and ask the German court to order their protection. But we don't have that sort of particularized information available to present to the German tribunal, and that's why we're seeking the aid of the U.S. courts in discovery here. Thank you. You've reserved three minutes for rebuttal, so we'll hear from the other side. Mr. Hecht. Thank you, Your Honor. May it please the court, Jason Hecht for RWE Trading Americas. You know, as Your Honors have recognized in questions this morning, we're not here on a legal issue or a complicated question about the scope of 1782. This is a relatively straightforward review for abuse of discretion on a run-of-the-mill discovery ruling. In granting the motion to quash, the district court made two factual findings based on its review of what was essentially an unchallenged factual record. And I want to focus on those because in both instances, SWF acts as if we are here really on a clean slate, and we're not. Those two factual findings are obviously subject to clearly erroneous review by this court, and in large part, SWF's argument is to ask if it was legal error to make the factual finding that the court made, and that's just not how the review should work. The two issues were, number one, Mrueta's own search, and number two, obviously, control of RWE AG's own documents. And they're both intensely factual, so I'll deal with them one at a time. But on the first finding, referring to the two declarations from Mrueta's general counsel, Judge Furman wrote, this is at A8 to A9, these declarations established two dispositive facts. First, they established that Mrueta conducted a reasonable search for responsive documents, and that the search came up empty. And so, really, there's two things happening there. The court considered both the reasonableness of the search, and I agree with the sentiment before. I think it's clear there was a search done. And also, the court wrestled with what's at issue in the foreign proceedings, what's requested here, what ought to be responsive, right? The reason that we are here having this debate about the one windmill document and policies and procedures that were sent by the parent corporation to the American subsidiary, the reason we're having that debate is because, as a result of the very thorough search that Mrueta performed, we presented all this information to the court. Judge Furman considered it. He considered it against the backdrop of what the foreign proceedings involve, what the underlying issues are, and made a determination both about what was responsive and what, in light of the position of the companies, the subject of the proceedings, and the nature of the documents described, whether the search was reasonable. And all of that is subject to a clearly erroneous review. What SWF is really doing here is saying there are responsive documents. They're literally just setting aside the finding that Judge Furman made that there are no responsive documents. These issues were all aired. The exact same arguments were made below, and Judge Furman concluded against this entire factual record that they're not responsive. And the theory here is essentially that there must be responsive documents, and therefore the search was wrong. And that's the full premise. This is just Lilia. Would you focus on the one document, the NOG document that was found? Sure. And why that's not being produced? Sure. So just to step back for a moment, the transaction here, the foreign transaction, was an asset swap between two German energy corporations. And the second transaction at issue in the foreign proceedings, or potential foreign proceedings, which is an agreement between one of those energy companies and essentially a corporation affiliated with the city of Frankfurt. The subpoena, of course, is written incredibly broadly. It refers to anything involving any of these companies. And so the subject matter of the 1782 application, however, was for documents in aid of these foreign proceedings. And in granting the 1782 application, the court said, I'll allow discovery relevant to those foreign proceedings. So that has to be the generation and delivery of electricity in Europe. A document about a windmill, excuse me, a wind farm in the United States is just well outside the scope of the foreign proceedings and well outside the scope of responsiveness of the subpoena. And this is the sort of, I would say, kind of routine responsiveness decision that district courts make all the time, whether it's on a motion to quash or a motion to compel. I know, but I just don't – I did ask about the relevance of the document, but I didn't judge firmly. I don't think you can say that he made in his decision a determination that it was either non-responsive or irrelevant. It may be something that might be just clear based upon the record, but I didn't see anywhere in his decision where he made any determination of either of those things, right? So it's a good question, Judge Bianco, and, you know, I would say two things. One, the affidavits were not particularly long. You know, Judge Furman did cite, in particular, to the paragraph of the first affidavit that discussed this issue. I believe it was paragraph 10 of A354, and Judge Furman cites to that on A8 in his opinion. So it was clear that he read this issue, and, in fact, when he makes the factual finding that there were – Let's say somewhere implicitly he was making that determination. Why wouldn't that document be responsive to item four that says, all documents from January 1, 2017 to the present referring, reflecting, or relating to energy, renewable energy business? Wouldn't a discussion about a windmill farm be responsive to that number four? Well, in the context of the 1782 application, we're not here in sort of plenary civil litigation. We're here only in aid of contemplated – usually it's factual. Here it's contemplated foreign proceedings, and those foreign proceedings are on the generation and delivery of electricity in Europe, and so that's the limiting factor. And so Judge Furman's order here is essentially interpreting the – you know, the subpoena can be no broader than the original scope of the foreign proceedings in which they are – which the subpoena is supposedly in support of, right? I mean the – Okay. Can I ask you a question about the second issue? There was suggestion in the briefs, and Ms. Gross mentioned it this morning too, that the GC's response as it relates to contacting the general counselor of RWEAG with respect to whether or not they would voluntarily provide the documents. And she used the word, it's my understanding that they would refuse, and their suggestion was that that was like an intentional creative praising because it's not quite accurate. I don't want to address that. I do, and I appreciate the question. So I'll make a couple points on that issue. The first is that – is a legal point, which is that, you know, this is an area where I think there's agreement on both sides that SWF has the burden of showing control, and they didn't offer a single fact in the district court or in this court to demonstrate that Rowetta had control over RWEAG's documents. It's a fairly difficult and unusual position of trying to prove that the court's conclusion was clearly erroneous and that the court abused its discretion without offering – when they had the burden of proof without offering, you know, a single piece of evidence. We, despite not having that burden, went out and gathered a whole bunch of evidence on the sort of what we view as the practical considerations, practical ability factors for whether RWEAG – excuse me, RWETA has control of RWEAG's documents, and the district court made its conclusion based on that record. You know, the understanding point, the specific language that they pick, and again, I don't think it comes remotely close to carrying their burden to kind of nitpick around the language that was used. But it's really just, you know, the difference between formally saying, you know, can I have these documents, here's this subpoena, versus the discussion that they clearly had with RWEAG because they discussed whether the employees were involved in the transaction. You know, and the discussion was, as I understand it, essentially, you know, you've never given us these documents before, I assume you're not giving them to us now, right? I mean, the declaration lays out a pretty long history of separation between the companies. There are a number of reasons that the companies are intentionally, you know, kept separate from one another, European privacy regulations, all sorts of things. So in the context of their day-to-day interactions, it would be relatively strange for the General Counsel of RWETA to say to the General Counsel of RWEAG, even though I know we've established our networks to keep completely separate, will you give me these documents today? I mean, my understanding is that they had a discussion in which it was clear to both the General Counsel of RWETA and the General Counsel of RWEAG that they've worked very hard to maintain good corporate governance and separate corporate form, and they wouldn't be blurring the lines here. And so that's really all that's there. I'm not sure if that answers the question. If that was a longer answer than I intended to give, I apologize. That's fine. Thank you. This is just for you. Just to go back to the one document, the energy document, did RWETA affirmatively refuse to produce that, or was that ever resolved? And if there was an affirmative refusal, where is that in the record? So, you know, I don't think there was an affirmative refusal. Your Honor, just because I don't think it was teed up that way. You know, I may be misremembering something, but certainly from my perspective, you know, I think what we were doing was saying, look, we did this search, and we want to just be completely transparent with the district court about what we found. Here's anything we found that is remotely related to the interaction between these two companies. And so it wasn't sort of a... Well, as Judge Bianco pointed out, maybe this is a small point, who knows, but Judge Furman does not seem to have resolved, at least in any explicit way, the issue relating to that particular document. Is that fair? Well, so I would respectfully disagree. I think, you know, when he says in his opinion that Rowetta performed a search for responsive information and came up empty, you know, I think it's clear that he was thinking both about the concept of responsiveness and what was found. And in a larger record, you could say, oh, God, you know, how do we know whether he thought about this? But this is not a huge record. You know, there are not that many documents at issue. He cited to the paragraph where we're discussing this issue, and his opinion in citing to that paragraph talks about the concept of a search for responsive information. He used that exact phrase and then said, you know, the search came up empty. And so I think that is fairly read as his conclusion that this is not a document that's found incorrect, that this is not a document that was found responsive to the subpoena. Thank you very much, Judge Bianco. Judge Park, any further questions of the Appellees Council? No, thank you. There you are. Ms. Gross, you have three minutes for a vote. All right. Thank you. Just to address a few of the points that came up, first of all, with respect to the scope of the subpoena and the scope of responsiveness, it's not really a fair description to say that the only issue in play here is an agreement for the generation of electricity in Europe. This was an agreement for a merger between two large German energy companies, and there were implications for that beyond Europe. There were certainly implications in the United States. Both RWEAG and its counterparty to that transaction, Aon, made public statements that there were potential U.S. antitrust implications. There were potential reporting obligations in the United States. And to the extent that some of the business involved included energy, including green energy, in the United States, that's going to be rolled into the transaction, and that's certainly going to be relevant. So I just want to be clear that although, yes, the main underlying transaction that is at issue in the European proceedings is this merger between two German energy companies, it's not as if the implications of this merger and most likely the preparations for that merger stopped at the German border. With respect to the reasonable search, again, this is the first I've heard that Rowetta is claiming it actually looked for documents. Its submissions for the district court say otherwise. They say they interviewed employees. They checked into the subject matter in Rowetta's files and determined that there was nowhere to search. So to infer from that and from those filings that an actual search of documents is done, it's not in the documents. And presumably, you know, it's not a long record. There was certainly space for Rowetta to explain if it had actually conducted this search of documents. And there's just nothing in the submissions that supports that other than a reference to one document that is responsive and, as Your Honors has pointed out, that Judge Furman didn't really resolve below. Well, so the response to that was the came up empty was set in the context of the submission that talked about relevance and responsiveness. Right. So we can read that broadly to have dispositively resolved the issue of the particular energy-related document. Right. Although the search that was described was interviews and a review of the subject matter of the files rather than an actual review of documents. You know, with respect to the one energy document that is described, you know, as has been pointed out, the judge makes that broad statement, but he never really makes a statement about whether or not it's relevant. And beyond that one document, there are additional categories of documents that are potentially relevant. Again, documents that RWEAG did send to Rowetta in the ordinary course, announcements, policies, et cetera, that could include information about the transaction. So one of the things that you said in, I think, answer to just Bianca in the first part of the argument, was that there are issues relating to discovery in Germany, restrictions that make it very difficult to get from RWEAG the sorts of documents that you're looking for. Is that a fair description of your response? There are restrictions that make it difficult to obtain documents if we can't describe the individual documents in detail. There's not, to my understanding, any prohibition on turning over these documents, just as the discovery mechanisms function in Germany. Just as a, I guess I'm interested because having dealt with some of these 1782 cases in the past, I thought one of the factors in connection with these proceedings was whether the request was or might be viewed as an attempt to circumvent foreign discovery restrictions. And so your answer surprised me. No, that's fine. It sounds like that was part of the reason, part of the motivation for this particular request. Right, and you're talking about the intel factor regarding, you don't want to be avoiding foreign restrictions on gathering. We have 1782 for a reason. It's sort of a sword and a shield. Right. Well, in response to that, there's ample case law cited in my brief. There's the Porsche automobile holding case out of Guadalupe, explaining that that factor doesn't mean that if it's difficult to get discovery in the foreign court, that you're not permitted to seek that in the United States. In fact, those cases specifically say that's fine. The real issue is, is there some sort of barrier to over-information? Are you asking for privileged information? Are you asking for bank information that can't be turned over in that company? Are you asking for information that's already been sought in that foreign tribunal, and the foreign tribunal has told you no? And in that case, you could fairly be said to be circumventing foreign restrictions on proof gathering here. That clarifies your original answer, because I think you said something slightly different. Apologies for any lack of clarity. On the issue of control, do you disagree that you've got the burden, do your clients got the burden to show control? No, I don't disagree about the burden. That's clear. I will say, you know, Rweta cast this as Stadwerk not having proof of lack of control. And I would say that, you know, there are two strands of that. One, Rweta does have proof, or I'm sorry, Stadwerk does have proof, submitted by Rweta to the district court that Rweta really isn't sure whether or not it has control over RWEAG's documents. And opposing counsel talked about this. The declaration that Rweta's GC put in said that it said a variety of things. It was very detailed on some things. But when we get to Rweta's ability to obtain documents from RWEAG, if it asks for them, all she says is that she has some discussions with RWEAG. She has an understanding that those documents would not be obtainable, but she doesn't say that she asked for them and RWEAG said no. It doesn't say, in fact, that it's certain that those documents could not be obtained. So it seems to me that you're relying on what is not said,  We don't have more detailed information about their inner workings, but we do have the fact that there were these very detailed discussions of all the things that Rweta could and could not do. And then Rweta's one affirmative representation with respect to its practical ability to obtain documents from RWEAG is a vague, unsupported understanding. And with respect, if that's all that a subpoena target has to do to prove that it doesn't have control, then that opens the door for all sorts of corporate subpoenas targets to simply rely on an understanding, not test it, not find out the facts, and rest on the fact that this knowledge that it specifically has. I just want to point out, though, the understanding here wasn't just an understanding. I think if we asked, they wouldn't give it to us. The declaration does say it was a particular discussion about this subpoena. So this is not some broad principle where I'm not going to discuss it with them, but I just understand that they wouldn't do this because of our past history. There was a representation that there was a specific discussion about this subpoena, and as a result of that, the understanding was that they would refuse to provide it. So I don't think it's as open-ended as you're suggesting, some vague understanding. Well, there's nothing that she says about that specific conversation that says she's basing it on past experiences with them. I think it should also give us pause that this understanding is convenient and was not raised until reply papers when we pointed out that RWEAGA had never said that it couldn't obtain these documents. And now when the subject is the subpoena and they're having a specific discussion about the subpoena, now there's an understanding that these documents can't be provided. So I think that that should give us pause. But also, if a subpoena target is saying it doesn't have control over documents, but then it's submitting a declaration that's really vague on that and suggests that that's not really certain knowledge, that seems to me evidence that there may be control. Thank you very much. Just, Bianca or just Park, do you have any other further questions? No, thanks. Thank you. We'll reserve the decision.